UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DANIEL SPENCER and                )
FAYE SPENCER,                     )
                                   )
          Plaintiffs,             )
                                   )
     v.                            )    CASE NO. 1:04-cv-0399-DFH-TAB
                                   )
LIBERTY MUTUAL INSURANCE          )
CORPORATION and NEW HAMPSHIRE     )
INSURANCE COMPANY,                )
                                   )
          Defendants.             )

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Daniel Spencer suffered severe and permanent injuries in an accident caused by an uninsured motorist. Daniel and his wife Faye Spencer have sued Liberty Mutual Insurance Corporation and New Hampshire Insurance Company for insurance coverage. The court has diversity jurisdiction under 28 U.S.C. § 1332. All parties have moved for summary judgment.

Spencer suffered his injuries while he was trying to help an injured victim of an accident in which Spencer and the truck he was driving had been involved only moments earlier. As Spencer and others were trying to rescue a victim of the earlier accident, the uninsured vehicle crashed into them.

As explained below, the undisputed facts show that Spencer was covered by both defendants' insurance policies. His rescue efforts were part of his "use" of the insured truck, and he was acting in his capacity as an employee. His actions to assist the injured victim were reasonably within the contemplation or intentions of the parties to the insurance contract. The plaintiffs' motion for summary judgment is granted and the defendants' motions are denied.

I.      *Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).

The interpretation of an insurance policy "'involves the same rules of construction and interpretation as other contracts.'" *Myles v. General Agents Ins. Co. of America, Inc.*, 197 F.3d 866, 868 (7th Cir. 1999), quoting *Smith v. Allstate*

*Ins. Co.*, 681 N.E.2d 220, 223 (Ind. App. 1997).  The application of unambiguous language in an insurance contract to the undisputed facts of a case is a question of law.  *Harden v. Monroe Guar. Ins. Co.*, 626 N.E.2d 814, 817 (Ind. App. 1993).  Generally, where the language of an insurance policy is susceptible to more than one reasonable interpretation, "the court must construe the language in favor of the insured."  *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, 40 F.3d 146, 151 (7th Cir. 1994), citing *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985).  But when, as here, the injured party is not the named insured, the policy is construed from a neutral stance.  *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 291 N.E.2d 897, 899 (Ind. 1973).

II.    *Undisputed Facts*

    A.    *The Accidents*

On March 5, 2002, Daniel Spencer was driving a semi tractor-trailer southbound on an interstate highway in Florida hauling a load of fishing boats for his employer, Starcraft Marine, LLC, of Topeka, Indiana.  At about 6:00 a.m., a pick-up truck traveling approximately 85 miles per hour "went around" Spencer's truck.  The pick-up lost control and drove beneath another semi tractor-trailer traveling about 100 feet in front of Spencer.  Debris from that collision "flew all over the place," and some debris hit Spencer's truck.  Spencer Dep. 42.

Spencer immediately pulled his truck onto the shoulder of the highway.  The highway had six lanes, three northbound lanes and three southbound lanes.  The pick-up was stopped in the center southbound lane of the highway with one lane separating the pick-up from Spencer's truck on the shoulder.  Spencer used his CB radio to inform the other driver what had just happened.  The other driver pulled his truck onto the shoulder some distance ahead.  Spencer left his engine running, put on his emergency flashers, and exited his truck.

Spencer heard the passenger of the pick-up truck screaming for help.  He crossed the lane of the highway and went to the pick-up truck.  He then went back to his truck to get a flashlight.  He returned to the pick-up and gave the flashlight to the driver of the pick-up.  The passenger was trapped in the vehicle because the dashboard had caved against her legs.

Spencer returned to his truck a second time to get safety triangles.  He gave them to the driver of the pick-up to place on the highway to alert oncoming traffic.

A tanker truck traveling north had also stopped to assist.  Spencer and the two drivers of the tanker tried to free the trapped passenger from the pick-up. After their initial attempts failed, Spencer returned to his truck a third time to retrieve a crowbar stored under his bunk.  They were still unable to move the dashboard with the crowbar enough to free the passenger's legs, so the other men went to their truck to get a jack.

While the other men were retrieving the jack, the injured passenger told Spencer she was getting cold.  Spencer returned to his truck a fourth time to get his jacket for her.  One of the other drivers also gave her a blanket.

Spencer and the others could not lift the dashboard with the jack because the jack was not high enough.  Spencer returned to his truck a fifth time to get some blocks to raise the jack, but he could not find any.  One of the other drivers brought some gas caps and placed them under the jack.  This resulted in some progress.

While the other drivers were trying to raise the dashboard from the passenger's legs with the jack, Spencer returned to his truck a sixth time to use his CB radio to check on the status of emergency response vehicles.  He returned to the pick-up and told everyone that help was on the way.

Spencer then knelt on the pavement next to the passenger seat of the pick-up.  He took over operating the jack while the other men attempted to free the passenger's legs.  In the midst of this rescue effort, a 1985 Chevrolet van crashed into the pick-up.

Spencer estimated that less than five minutes elapsed from the time he pulled his truck onto the shoulder to the moment of his injury.  He also estimated that seven seconds elapsed from the last time he left his truck to the moment of

his injury.  Spencer suffered severe and permanent injuries rendering him quadriplegic.[1]

During his deposition, Spencer was asked why he had stopped his truck after the first accident.  His answer was "Because that's the law."  Spencer Dep. 42.

B.   *The Insurance Policies*

Defendant Liberty Mutual issued a commercial automobile insurance policy to Starcraft, Spencer's employer, that covered the semi tractor-trailer he was driving on March 5, 2002.  The Liberty Mutual policy included uninsured motorist coverage up to $1 million for:

> all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damage must result from "bodily injury" sustained by the "insured" and caused by an accident with an "uninsured motor vehicle."

Liberty Mutual Ex. C ("Ex. C").  The parties agree that the 1985 Chevrolet van that struck Spencer was an uninsured motor vehicle as defined in the Liberty Mutual policy.[2]

---

[1]In this record, the details of the accidents come exclusively from Spencer's own deposition testimony.  There are indications in the record that others who were present died as a result of the accidents, including the woman who was trapped in the pick-up truck.  See Spencer Dep. 43; Tr. 3 (May 19, 2005) (counsel reported at least three other persons were killed).

[2]Under the Liberty Mutual policy, an "uninsured motor vehicle" is defined
(continued...)

The truck driven by Spencer was also covered by an umbrella insurance policy issued to Starcraft by defendant New Hampshire Insurance Company. The Indiana Supreme Court has held that the uninsured/underinsured motorist statute requires an umbrella policy that covers excess third-party automobile liability claims to also cover excess uninsured motorist claims, absent a written rejection of such coverage by the insured. See *United National Ins. Co. v. DePrizio*, 705 N.E.2d 455 (Ind. 1999); Ind. Code § 27-7-5-2(a) & (b). Starcraft did not reject the uninsured motorist coverage under the New Hampshire policy. The New Hampshire policy provided coverage to a limit of $15 million in excess of coverage provided by certain underlying insurance policies, including the Liberty Mutual policy. Under the terms of the umbrella policy, New Hampshire is liable to pay on its policy only if the underlying insurer is found liable to pay on its policy and, in the case of an insured's employee, only if the employee was injured while acting in his capacity as an employee. New Hampshire Ex. A. Other facts are noted below as needed, keeping in mind the standard that applies on summary judgment. Because the court is granting plaintiffs' motion, defendants are entitled to have the evidence viewed in the light reasonably most favorable to them.

---

[2](...continued)
in relevant part as a vehicle "for which no liability bond or policy at the time of an 'accident' provides at least the amounts required by the financial responsibility law of Indiana." Ex. C. The financial responsibility law of Indiana provides that a motor vehicle may not be operated on a public highway in Indiana without a minimum amount of liability insurance of $25,000 per person and $50,000 per accident for bodily injury or death, and $10,000 in property damage. Ind. Code §§ 9-25-4-1, -4, -5. The 1985 Chevrolet van that struck Spencer was insured to meet Florida's lower limits of $15,000 per person and $30,000 per accident. Cplt. ¶ 22.

III.    *Discussion*

The material facts of this case are not in dispute.  The question is whether any party is entitled to judgment as a matter of law.  The principal issue is whether, at the time of his injury, Spencer fit the definition of an "insured" under the Liberty Mutual policy.  If Spencer was covered by Liberty Mutual's policy, he was also covered by New Hampshire's policy as long as he was acting in his capacity as an employee when he was injured.

"Insured" is defined differently in separate provisions of the Liberty Mutual policy.  The uninsured motorist coverage provides one definition; the liability provision provides another.  Under the uninsured motorist provision, the term "insured" is defined in relevant part as "Anyone occupying a covered auto."  The term "occupying" is defined as "in, upon, getting in, out or off."  Ex. C.  Under the liability provision, the term "insured" is defined as "Anyone . . . while using with your permission a covered 'auto' you own."  *Id.*  "Using" is not defined in the policy.

Spencer is entitled to uninsured motorist coverage if he fits either definition of "insured."  Under Indiana law, "if a person qualifies as an insured under the liability section of the policy, he must also qualify under the uninsured motorist section or the insurance contract violates public policy."  *Smith v. Allstate Ins. Co.,*

681 N.E.2d 220, 222 (Ind. App. 1997).   The Indiana Court of Appeals has explained the reason for this rule as follows:

> Indiana Code § 27-7-5-2 [the uninsured motorist statute] mandates insurers to make available uninsured motorist coverage in their liability policies.  The purpose of uninsured motorist insurance is to put the injured insured party in substantially the same position as if the offending party had complied with the minimum requirements of the Financial Responsibility Act.  Any language in the insurance policy which limits or diminishes the protection required by statute is contrary to public policy.  The statute is violated when the policy specifically limits uninsured motorist coverage as to persons who would otherwise qualify as insureds for liability purposes.

*Whitledge v. Jordan*, 586 N.E.2d 884, 886-87 (Ind. App. 1992) (citations omitted). Thus, if Spencer qualified as an insured as that term is used in the liability section of the Liberty Mutual policy, he was an insured for purposes of the policy's uninsured motorist coverage.

A.  *"Insured" under Liability Coverage*

Under the liability section of the Liberty Mutual policy, Starcraft is the named insured.  An "insured" is defined in relevant part to include "Anyone . . . while using with your permission a covered 'auto' you own."  Ex. C.  Liability coverage is limited to damages "caused by an accident and resulting from the ownership, maintenance, or use of a covered auto."  *Id.*

The parties agree that Spencer was operating Starcraft's truck with permission, that he was not engaged in maintenance, and that his injuries were

caused when the Chevrolet van struck the pick-up.  The issues are whether Spencer was "using" Starcraft's truck when he was injured and whether the accident that injured him resulted from his use of that truck.

1.    *"Using" the Insured Truck*

Use of an insured vehicle is not limited to physical occupancy of the vehicle. In *Monroe Guaranty Ins. Co. v. Campos,* 582 N.E.2d 865 (Ind. App. 1991), the Indiana Court of Appeals held that an operator of a motor vehicle may continue to "use" the motor vehicle for purposes of uninsured motorist coverage while not occupying or maintaining physical contact with the vehicle.  In *Campos,* police summoned a tow truck driver to the scene of a traffic stop and instructed him to wait in the back seat of a police car.  The tow truck driver returned to his truck once to respond to a page from his employer, then returned to the back seat of the police car.  A police officer then informed the tow truck driver that the driver of the other vehicle had been arrested and requested the tow truck driver to tow the other vehicle.  When the tow truck driver exited the police car and began walking toward the vehicle to be towed, he was struck by a vehicle driven by an uninsured motorist.  582 N.E.2d at 866.

The driver sued his employer's insurance company for uninsured motorist coverage.  The trial court granted summary judgment for the tow truck driver and held as a matter of law that the driver, though not occupying or in direct physical

contact with the tow truck at the moment of impact, was still "using" the tow truck when he was injured because he "was engaged in an activity essential to the towing process." *Id.* at 867. Affirming the holding of the trial court, the Court of Appeals explained:

> The goal of this court when interpreting an insurance policy is to ascertain and enforce the parties' intent as manifested in the insurance contract. . . .
>
> Thus, we will seek to determine the appropriate coverage of the insurance contract here at issue by looking to the intent of the parties to the contract. We will not remove from coverage a risk which the policy can be reasonably construed to protect against.
>
> The contract between Monroe and Allen Towing provides insurance coverage to Allen Towing and its employees who are engaged in the business of towing disabled vehicles. The parties certainly would have contemplated the nature of this business activity. Removal of disabled vehicles from roadways cannot be accomplished solely by the activity of "propelling or directing" the towing vehicle. Reasonable persons would expect that a tow truck operator must engage in other activities during the towing process, some of which will require that he exit the vehicle (e.g. evaluation of the towing scene, securing the vehicle to be towed, attachment of towing equipment to the disabled vehicle, conferring with appropriate officials concerning safety procedures).
>
> Accord: *Hartford Accident & Indemnity Company v. Booker* (1976), 140 Ga. App. 3, 230 S.E.2d 70 ("use" of garbage truck included walking near truck to collect garbage); *Great American Insurance Company v. Cassell* (1990), 239 Va. 421, 389 S.E.2d 476 (firefighter was "using" an insured fire truck as he completed a required report while standing 20 feet from the fire truck); *Stevens v. U.S.F. & G. Co.* (1977), Miss., 345 So.2d 1041 (tow truck operator was "using" a wrecker when he manually removed debris from the highway).

582 N.E.2d at 870-71. The appellate court concluded that Campos was entitled to uninsured motorist coverage because he "was 'using' the tow truck in a manner

contemplated by the parties when he was struck by an uninsured motorist." *Id.* at 871.

Accordingly, the question under Indiana law is whether Spencer, when he was injured, was acting in a manner intended or reasonably within the contemplation of Liberty Mutual and Starcraft when they contracted for the insurance coverage.   On the undisputed facts, the answer is yes.   Defendants' arguments to the contrary rely on the "propel or direct" standard that the Indiana court expressly rejected in *Campos.*  See 582 N.E.2d at 870.

*Campos* and the cases cited by that court in the excerpt quoted above involved vehicles – garbage, fire, and tow trucks – with specialized purposes, and the injuries at issue occurred while the injured person was engaged in conduct directly related to that specialized purpose.  This case is factually distinct from *Campos* and the cases cited therein on that basis.  However, the standard applied in *Campos* – whether "Campos was 'using' the truck in a manner contemplated by the parties when he was struck by an uninsured motorist," 582 N.E.2d at 871 – does not turn on that factual distinction and readily encompasses the facts of this case.

First, the undisputed facts show that Spencer was required by Florida law to stop his truck and to assist injured victims at the scene.  This obligation applied regardless of whether he caused the accident and regardless of whether

his truck made physical contact with other vehicles.  Florida Statute §§ 316.027 and 316.062 provide in pertinent part:

> 316.027.  Crash involving death or personal injuries
>
> (1)(a) The driver of any vehicle involved in a crash resulting in injury of any person must immediately stop the vehicle at the scene of the crash, or as close thereto as possible, and must remain at the scene of the crash until he or she has fulfilled the requirements of § 316.062.  Any person who willfully violates this paragraph is guilty of a felony of the third degree.
>
> * * * *
>
> 316.062.  Duty to give information and render aid
>
> (1) The driver of any vehicle involved in a crash resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person . . . shall render to any person injured in the crash reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary, or if such carrying is requested by the injured person.

The parties to a vehicle insurance contract should contemplate that the driver would comply with all laws that applied to him.  Defendants have not identified any case law holding that a driver providing legally required assistance was no longer using the vehicle that was involved in the accident. Tr. 28 (May 19, 2005).

The Florida statutes applied to Spencer if the vehicle he was driving was "involved in" the first accident that injured the passenger of the pick-up truck. The undisputed facts in this case establish that Spencer was following another semi-truck at a distance of approximately 100 feet behind.  The blue pick-up was

traveling at high speed when it "went around" Spencer's truck, lost control and began to swerve, then passed under the semi-truck in front of Spencer's truck. Debris from that collision was "flying all over the place" and some of it hit Spencer's truck. Spencer pulled onto the shoulder, activated his hazard lights, and used his CB radio to tell the driver of the other semi-truck what had just happened. Spencer Dep. 11-14.

These undisputed facts show that Spencer was "involved" in the first accident as that term is used in the Florida statutory provisions. Courts have often applied similar "stop-and-assist" statutes to drivers of vehicles that were not involved in direct collisions. See, *e.g.*, *State v. Perebeynos*, 87 P.3d 1216, 1219 (Wash. App. 2004) (affirming criminal conviction of driver whose sudden swerve triggered collision between other vehicles was "involved" in the accident despite lack of contact with other vehicles); *Armstrong v. State*, 818 N.E.2d 93, 97 (Ind. App. 2004) (holding that incident other than a collision could be a "fatal accident" for purposes of statute, and noting that statute should be construed consistently with purposes of providing prompt aid for persons who are injured or whose property is damaged and of establishing the identity of the parties so that they and police authorities may know with whom to deal in matters growing out of the accident); *People v. Kinney*, 82 P.2d 203, 207 (Cal. App. 1938) (affirming conviction and holding that "involved in" language did not limit duty to drivers of vehicles that "strike and injure a pedestrian, or which are involved in a collision

with other vehicles.  It includes all machines which are involved in accidents of any nature whatever in which another individual is injured or killed.").

On this record, the pick-up truck's loss of control occurred in an unbroken sequence as part of its high-speed attempt to pass Spencer's truck.  Spencer's truck was going about 72 miles per hour, roughly 100 feet behind the other truck, when the first accident occurred.  Spencer's truck would have covered the 100 feet in approximately one second.  His truck then hit debris that had flown from the crash.  Defendants point out that Spencer's truck did not collide with the pick-up or the other truck.  They argue that Spencer was not actually required to stop his truck and to assist under Florida law, or at least that there is a factual dispute concerning whether he was required to stop.  In other words, defendants suggest that if Spencer had merely driven on and had later been criminally prosecuted for leaving the scene of the accident, he might have had a good defense.

The court does not agree, especially in light of the fact that Spencer's truck was so close to the collision that the debris hit his truck.  Also, if everyone had survived, no lawyer or judge would be surprised if the driver of the pick-up had later claimed that Spencer had somehow contributed to the first accident.  Even if Spencer might have had a good defense to a criminal prosecution, however, the controlling standard under Indiana law is whether the contracting parties – Starcraft and Liberty Mutual – would reasonably have expected a Starcraft driver

under these facts to assume that he might be deemed to have been "involved" in the accident and to stop to render assistance.

Defendants' suggestion that Spencer should have assumed he was not "involved" and legally could have driven on is, to put it mildly, inhumane, irresponsible, and completely unrealistic. A driver violating the Florida statutes is subject to criminal prosecution. He or she would almost certainly be subject to firing. Starcraft and Liberty Mutual could and should reasonably have contemplated and intended that a Starcraft driver in a situation raising the uncertain applicability of the Florida statutes would err on the side of caution, would assume he might have been "involved," and would pull over to assist.

New Hampshire cites *West American Ins. Co. v. Lovett*, 519 So.2d 39 (Fla. App. 1987), for the proposition that a vehicle that merely drives over debris from an earlier accident is not "involved" in the accident so that the driver has no legal obligation to stop and render assistance. New Hampshire Br. at 7. In *Lovett*, a hit-and-run accident had killed a bicycle rider. Several minutes after that fatal accident, Mr. Lovett drove by, ran over some of the accident debris, and stopped to help. He was then struck and killed by another vehicle that was not insured. The Florida Court of Appeals held that Mr. Lovett was not covered by his uninsured motorist coverage because he was not occupying the insured vehicle when he was killed, and the court rejected an argument that he was required by law to stop and assist. The court found that Mr. Lovett had not been "involved"

in the first accident because it had occurred several minutes earlier, so he was not obligated by the Florida statutes. *Id.* at 40. *Lovett* is readily distinguishable from this case, where the accident took place right in front of Spencer, whose truck hit the debris flying from the accident.

More important, coverage here does not depend on Spencer's actual legal obligation to stop and assist. Under Indiana law as set forth in *Campos*, the question is whether Liberty Mutual and Starcraft should reasonably have contemplated that a Starcraft driver under the circumstances would assume he might be involved and therefore obligated to stop and assist. Florida case law is not helpful to this inquiry. The law does not expect a person in Spencer's situation – with an injured victim screaming in pain a few feet from his truck – to use his CB to contact a lawyer (at 6:00 a.m., no less!) to determine if he is actually required by Florida statutes to stop and assist.

Liberty Mutual asserts: "Although Spencer may have been in the act of fulfilling a statutory duty to render assistance to an injured motorist, his acts were certainly not transactions essential to the use of the vehicle." Liberty Mutual Reply Br. at 13. The assertion is groundless. Compliance with statutory duties imposed on the driver of a motor vehicle as a condition on using the vehicle on public roads is, as a matter of law, conduct essential to the driver's use of that vehicle. In any case, under *Campos*, whether Spencer's conduct was "essential" to the use of the truck is not controlling but rather is relevant to the extent such

-17-

a determination sheds light on what was reasonably contemplated or intended by the parties to the insurance contract.

Defendants suggest the court should read *Campos* narrowly as limiting uses within the reasonable contemplation of the parties to those essential to the purpose of the vehicle. *Campos* does not support such a limitation. On its facts, *Campos* held that parties to a vehicle insurance contract would surely contemplate every use that is essential to the core utilitarian purpose of the vehicle. The reasoning of *Campos* does not support the further conclusion that parties would contemplate such uses *and no others*. The trial court in *Campos* applied an "essential to the use" standard, 582 N.E.2d at 867, but the Court of Appeals notably did not. The Court of Appeals grounded its decision squarely on the reasonable contemplation of the parties to the insurance contract. See 582 N.E.2d at 870-71. However, even if the Court of Appeals had applied an "essential to the use" standard, Spencer's conduct would fall squarely within it. As noted, he was required by Florida law to stop his truck and assist at the scene. For this reason alone, Spencer's conduct was essential to his use of the vehicle.

Spencer was using the truck in a more direct sense as well. As part of rendering assistance, Spencer activated the emergency flashers on his truck to alert other traffic. He left the motor running, and he used the truck's CB radio to communicate with the other involved truck driver and to check the status of emergency response vehicles. He also returned to his truck several times to

retrieve equipment or personal items stored in the truck – a flashlight, reflector triangles, a crowbar, a jacket – and used these items in the ongoing rescue effort.

Further, Spencer was engaged in activity apparently required by the statute the very moment he was struck by the Chevrolet van.  In trying to free the injured passenger's legs from the collapsed dashboard, Spencer was "render[ing] to any person injured in the crash reasonable assistance."  Fla. Stat. § 316.062.

At the risk of stating the obvious, the prospect that Spencer would stop and render assistance at the crash site was also a prospect that Indiana  public policy takes into account, as well.  Not only statutory law but simple humanity should lead anyone to expect – and to hope – that someone in Spencer's position would stop and try to help the injured.  As Justice Cardozo wrote while a member of New York's highest court:

> Danger invites rescue.  The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences.  It recognizes them as normal.  It places their effects within the range of the natural and the probable.

*Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437 (1921), quoted in *Heck v. Robey*, 659 N.E.2d 498, 501 (Ind. 1995), abrogated on other grounds by *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104 (Ind. 2002).

The Supreme Court of Washington recently held that a person killed by an underinsured motorist while assisting at an earlier traffic accident was "using" the vehicle he had driven to the accident scene despite being some distance from it, and was entitled to underinsured motorist benefits under the policy covering that vehicle. *Butzberger v. Foster*, 89 P.3d 689 (Wash. 2004). The *Butzberger* court's standard for "using" – "whether a named insured . . . reasonably would expect [underinsured motorist] coverage under the facts of the accident" – was similar to that applied in *Campos*. In finding that the plaintiff had met that standard, the court reasoned:

> Contracting parties would anticipate a driver might have occasion to engage in an emergency rescue of another driver on the highway.
>
> There is every indication Butzberger intended to proceed in his vehicle after his rescue effort was complete. The rescue effort was merely part of the process of Butzberger's ongoing travel. * * * When driving, a Good Samaritan is unable to ignore the sight of a perilously stranded motorist. Hence, we recognize when a motorist interrupts his or her travel to rescue a victim in another vehicle, the rescue is a transaction essential to the use of the rescuer's vehicle.

*Id.* at 697-98 (citations omitted).[3]

In *Butzberger*, unlike here, the plaintiff came upon the scene of a completed accident some time after it had occurred. He was, in other words, a classic Good Samaritan. See Luke 10: 25-37. The reasoning and standard applied in *Campos*

---

[3]The *Butzberger* court was applying the "essential to the use" factor as one component of a three-part test to answer the broader question of "whether a named insured . . . reasonably would expect [underinsured motorist] coverage under the facts of the accident." 89 P.3d at 697-98.

might well extend to the passerby in *Butzberger*.  The facts of this case, however, do not require this court to predict whether the Indiana courts would extend the reasoning that far.  In this case, Spencer was involved in the first accident much more directly.  He was also "involved" as that term is used in the Florida statutes imposing a legal duty to stop and assist.  Under those circumstances, his conduct was within the reasonable contemplation of the parties to the insurance contract.[4]

The Supreme Court of Nebraska considered a case even closer to this one in *Allied Mutual Insurance Co. v. Action Electric Co.*, 593 N.W.2d 275 (Neb. 1999).  In *Allied*, Mr. Emry and his family had gone to a football game in a company vehicle.  He and his family were driving home when he saw a car and a pick-up truck collide in front of him.  He got out to see if anyone was hurt.  As he approached the accident scene, an underinsured auto struck and killed him.  The court held as a matter of law that Mr. Emry had been "using" the covered vehicle when he was killed, so that the underinsured motorist coverage applied:

> Under the facts presented, we conclude that Emry was "using" the company vehicle at the time he was struck and killed by the underinsured motorist.  Emry's journey home was suddenly and unexpectedly interrupted by an accident in the intersection he was about to cross.  Emry exited the vehicle temporarily to see whether anyone was hurt. He had not completed his intended journey and would have soon continued to drive home had he not been struck.

_____

[4]Justice Bridge, dissenting in relevant part in *Butzberger*, cited the absence of a *legal* duty to stop and assist as central to his opinion that the plaintiff's rescue activities were not essential to the use of the covered vehicle and, as such, not within "the reasonable expectations of the insured."  89 P.3d at 702.  Thus, all members of the Washington Supreme Court would appear to agree that someone in Spencer's position is entitled to uninsured motorist coverage.

> Such an activity could reasonably be expected to occur in relation to Emry's use of the vehicle. As part of the operation of the insured vehicle, a driver could reasonably be expected to temporarily exit the vehicle in order to assist victims of a traffic accident which the driver had just witnessed and which occurred in the driver's intended path. Thus, Emry's actions were part of the reasonably expected use of the vehicle as contemplated by the parties.

592 N.W.2d at 283.  The court predicts that the Indiana courts would apply the reasoning and standards of *Campos* to reach the same result in this case. Spencer was "using" the insured vehicle when he was injured in the second collision.

### 2.   *Injury Resulting from Use of the Truck*

The next issue under the Liberty Mutual policy arises from language limiting liability coverage to damages caused by an accident "resulting from . . . use of a covered auto."  Did Spencer's injury result from his stopping and rendering required assistance at the scene?

The defendants point out that "for an individual to qualify for coverage based upon 'use' of a vehicle, the efficient and predominating cause of the accident must arise from the use of the covered vehicle."  Liberty Mutual Br. at 18, citing *Indiana Lumbermens Mutual Ins. Co. v. Statesman Ins. Co.*, 291 N.E.2d 897, 899 (Ind. 1973) (stating that "the 'efficient and predominating cause' of the accident must arise out of the use of the vehicle in order for an unnamed insured to be covered").

That standard is easily met in this case.  But for his stopping and rendering assistance, Spencer would not have been struck by the Chevrolet van.  Moreover, under *Campos*, the focus is on the reasonable contemplation of the parties to the insurance contract.   Involvement in accidents is obviously within the contemplation of the parties to the insurance contract, and the duty to stop and assist is well known.  Injuries suffered as a result of such efforts are a reasonably foreseeable risk.

Highway crash sites can be exceptionally dangerous places.  In this case, the site was in the middle of a high-speed six-lane interstate highway before sunrise.  Rendering assistance at such a site immediately after a vehicle crash and before police and other emergency response services arrive carries a particularly high and certainly foreseeable risk of the kind of injury that occurred here. Spencer's injury resulted from his use of the truck because it was a reasonably foreseeable risk of that use.  Based on the undisputed facts, Spencer is entitled to coverage under the Liberty Mutual policy.

B.     *Using the Truck in his "Capacity as Employee"*

The New Hampshire umbrella policy covered Starcraft employees only for activities while "acting in their capacity as employees."  New Hampshire argues that Spencer was acting beyond his employment capacity when he was injured. The phrase "capacity as employee" is not defined in the policy, and this court

must interpret it neutrally since the injured party was not the named insured. See *Indiana Lumbermens*, 291 N.E.2d at 899. The question is whether Starcraft and New Hampshire intended or should have reasonably contemplated that the phrase "capacity as employee" would encompass conduct such as Spencer's conduct at the accident scene. The answer is yes.

New Hampshire cites two cases from the Indiana Court of Appeals to argue that an employee acting as a Good Samaritan does not act in the course of his employment because he does not take those actions for the benefit of the employer. Both cases are readily distinguishable from this case, in which Spencer was rendering assistance that was legally required or, at the very least, that he reasonably believed was legally required.

In *KCL Corp. v. Pierce*, 226 N.E.2d 548 (Ind. App. 1967), an employee was injured on the employer's property while helping to push a co-worker's car out of the snow after working hours. Reversing an award of worker's compensation benefits, the Court of Appeals found the injury was not sustained during the course of employment "because at the time of the injury the appellee was not performing a duty owed to her employer which was either required by or incidental to her employment." *Id.* at 551.

In *Construction Management and Design, Inc. v. VanDerWeele*, 660 N.E.2d 1046 (Ind. App. 1996), a construction worker was injured after he left a job site

to assist a nearby stranded motorist on private property.  Reversing an award of worker's compensation benefits, the Court of Appeals found that the injury was not sustained during the course of employment because "VanDerWeele was engaged in an endeavor which can only be described as personal and not in furtherance of company business.  Therefore, the accident did not occur in the course of VanDerWeele's employment."  *Id.* at 1051.  Likening the case to its earlier holding in *KCL*, the court stated that, like the employee in *KCL*,

> VanDerWeele owed no duty to the Company which might reasonably have been interpreted to include coming to the aid of an individual whose vehicle slipped from a private drive near the job site and became stuck.  The charitable act was undertaken entirely on VanDerWeele's own initiative, cf. *Northcutt v. Smith*, 642 N.E.2d 254 (Ind. App. 1994) (an employee is acting within the scope of his employment when the act done is not performed on the employee's own initiative), and did not further the business interest of the Company. . . .  Therefore, we conclude that the accident did not arise out of VanDerWeele's employment.

660 N.E.2d at 1051.

Invoking both *VanDerWeele* and *KCL*, New Hampshire contends that Spencer "was engaged in voluntary conduct unrelated to the employment and was not performing a duty owed to his employer or incidental to that duty."  New Hampshire Br. at 11.  The undisputed facts refute the argument.  Spencer stopped to render assistance to victims of an accident in which he had been involved, or at the very least reasonably believed he had been involved, while

driving as a Starcraft employee.   Spencer was acting in the course of his employment with Starcraft.

Both *VanDerWeele* and *KCL* both recognized that an employee's scope of employment extends beyond duties *expressly* required by the job.   In *KCL*, the course of employment encompassed duties "required by *or incidental to*" the employment.   226 N.E.2d at 551 (emphasis added).   In *VanDerWeele*, the course of employment encompassed a "duty to the Company which might reasonably have been interpreted to include" the conduct engaged in by the employee. 660 N.E.2d at 1051.

In *Northcutt v. Smith*, 642 N.E.2d 254 (Ind. App. 1994), cited in *VanDerWeele*, the Court of Appeals explained:

> "An injury arises 'out of employment' when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee.  This causal relationship is established *when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it* or when the facts indicate a connection between the conditions under which the employee works and the injury.
>
> "[F]or an injury to arise out of and in the course of employment it must occur within the period of employment, at a place or area where the employee may reasonably be, and while the employee is engaged in an activity *at least incidental* to his employment.
>
> "An employee's activity will be considered incidental to his employment if the activity advances, directly *or indirectly*, his employer's interests."

*Id.* at 257-58 (emphasis added; citations omitted), quoting *Weldy v. Kline*, 616 N.E.2d 398, 403-04 (Ind. App. 1993).

New Hampshire's assertion that Spencer's conduct was "unrelated" to his employment is untenable.  It is not as if Spencer pulled his truck to the shoulder and was injured after he walked out into a field to assist a farmer having difficulties operating his tractor.  Nor can Spencer's conduct be described fairly as "charitable act[s] undertaken entirely on [his] own initiative."  Spencer was hauling cargo for his employer.  He stopped at the scene of a serious accident pursuant to his legal duty resulting from his use of his employer's truck on the highways of Florida.  See Spencer Dep. 42.  Crossing the lane to assist the injured passenger was likewise a duty apparently imposed by law.  He also stopped because accident debris had hit his employer's truck.

Compliance with traffic laws clearly is at least "incidental" to the job duties of a truck driver, if not essential.  (The reader might consider the evidentiary value in an accident case of a defendant trucking company's employee manual telling drivers they are not required to or expected to comply with traffic laws.)  Compliance with traffic laws advances the interests of the driver's employer.  Stopping to check the employer's truck for damage after contact with road debris is likewise at least incidental to the job and advances an interest of the employer.

Even if Spencer had been under no apparent statutory duty to stop and assist, his conduct cannot fairly be characterized as the sort of unforeseeable "frolic" or "personal errand" that can take an employee beyond his employment capacity.  Spencer was a truck driver.  Truck drivers spend most of their working hours on the road.  Reasonable persons would expect that a driver, in the course of his employment, will encounter traffic accidents.  Reasonable persons would contemplate that a truck driver's employment would at some time place him in an emergency situation involving injured and endangered strangers.  Danger invites rescue, as Justice Cardozo wrote, and rescue entails risk.  Justice Frankfurter explained in interpreting the Longshoremen's and Harbor Workers' Compensation Act, with reasoning that applies here:

> The test of recovery is not a causal relation between the nature of employment of the injured person and the accident.  Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer.  All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose.  A reasonable rescue attempt * * * may be 'one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute.'

*O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 506-07 (1951) (citations omitted); see also *Rockhaulers, Inc. v. Davis*, 554 So.2d 654, 656 (Fla. App. 1989) (truck driver who was killed as he went to aid of persons in an accident was acting in capacity as employee for worker's compensation statute: "Injury incurred in the rescue of a stranger is compensable if the conditions of employment place

claimant in a position which requires him by ordinary standards of humanity to undertake the rescue.").  Amen.

In sum, Spencer was "using" the truck when he was injured because he was acting "in a manner contemplated by the parties when he was struck by an uninsured motorist." *Campos*, 582 N.E.2d at 871; accord, *Allstate Insurance Co. v. Cincinnati Ins.*, 670 N.E.2d 119, 122 (Ind. App. 1996).  He falls within the definition of insured in the liability provision of the policy because his injury was a foreseeable result of his use of the truck.  Finally, because Spencer was covered by the Liberty Mutual policy and was acting in his capacity as an employee when he was injured, he was covered by the New Hampshire policy for damages in excess of the Liberty Mutual policy.

C.    *"Insured" under Uninsured Motorist Coverage*

The plaintiffs argue that the uninsured motorist provision of the Liberty Mutual Policy provides an alternative ground for coverage.  To be covered directly under the uninsured motorist provision of the Liberty Mutual policy, Spencer must have been "occupying" the truck when he was injured.  The Liberty Mutual policy defines occupying as "in, upon, getting in, out or off" of the covered vehicle.  The definition can be ambiguous as applied in particularly close cases, with questions of degree involving distance, time, and intent.   In determining occupancy in the context of uninsured motorist coverage, Indiana courts rely on

a four-part test articulated in *Miller v. Loman*, 518 N.E.2d 486, 491 (Ind. App. 1987).

Under the *Miller* test, whether a person is "occupying" a vehicle for purposes of uninsured motorist coverage requires consideration of: (1) the distance between the accident and the covered vehicle; (2) the time separating the accident and the exit from the covered vehicle; (3) the individual's opportunity to reach a zone of safety; and (4) the individual's intentions in relation to the covered vehicle. See also, *e.g.*, *Lake States Insurance Co. v. Tech Tools, Inc.*, 743 N.E.2d 314, 320-21 (Ind. App. 2001) (applying *Miller* test to construe "getting in" to determine occupancy); *Barnhill v. Liberty Mutual Fire Ins. Co.*, 129 F. Supp. 2d 1192, 1197-99 (N.D. Ind. 2001) (applying *Miller* test to construe "alighting from" to determine occupancy); *Auto-Owners Ins. Co. v. Powell*, 757 F. Supp 965, 971-72 (S.D. Ind. 1991) (applying *Miller* test to construe "in, getting in, on, out or off" to determine occupancy); *State Farm Mutual Automobile Ins. Co. v. Barton*, 509 N.E.2d 244, 247 (Ind. App. 1987) (considering intent and opportunity to reach zone of safety in interpreting "alighting from" to determine occupancy).

One might wonder whether such a four-factor test can be applied as a matter of law. But the Indiana courts in *Miller* and the other cited cases decided the question as a matter of law. Also, in this case all the evidence comes only from Spencer. The jury would not be required to resolve conflicts between the testimony of different witnesses.

The undisputed facts show first that the distance between Spencer and his truck at the moment he was injured was the width of one lane of traffic.  Second, the time separating the accident from Spencer's last exit from or contact with the covered vehicle was only a matter of seconds.  Spencer Dep. 41-42, 46-47.  Third, Spencer did not have a meaningful opportunity to reach a "zone of safety" other than his truck.  The truck, in fact, was the only available zone of safety, and Spencer could not legally or morally seek shelter in his truck until after he had provided reasonable assistance to the injured.  Fourth, Spencer also intended to return to his truck – with the motor still running – and to continue on his journey to deliver the boats for his employer as soon as he could.

This court's task in this diversity case is to attempt to predict what the Supreme Court of Indiana would decide on these facts.  The court expects that the Supreme Court of Indiana would find as a matter of law that Spencer was "occupying" the covered vehicle as that term is used in the uninsured motorist provision of the Liberty Mutual policy.  However, the court's decision does not depend on that expectation.  Because Spencer was "using" the truck at the time of his injury and thus was an insured under the liability section of the policy, it is not necessary to decide definitively whether Spencer was also "occupying" the truck at the time of his injury.  Under Indiana law, "if a person qualifies as an insured under the liability section of the policy, he must also qualify under the uninsured motorist section or the insurance contract violates public policy."
*Smith v. Allstate Ins. Co.*, 681 N.E.2d at 222.

IV.     *Conclusion*

The law should not encourage a person in Spencer's position to keep driving, or even to pause and calculate whether helping an injured victim would take him beyond the scope of insurance coverage.  Liberty Mutual's suggestion that Spencer should have simply stayed in his truck and called for professional emergency help, see Tr. 16-17, 23 (May 19, 2005), is appalling.  Accepting the suggestion would drive a wedge between law and the better part of human nature. Starcraft and Liberty Mutual and New Hampshire could and should have reasonably contemplated that a driver using the insured vehicle in Spencer's position would try to help the injured, as he did.  In fact, most humane people would hope that a person in his position would try to help as he did.  Accordingly, that help was part of his use of the insured vehicle.  The Spencers' motion for summary judgment is granted and the motions for summary judgment of Liberty Mutual and New Hampshire are denied.  The Spencers' motion for summary judgment does not address the issue of damages.  The court will hold a conference on **Thursday, June 30, 2005, at 9:30 a.m.** to address the schedule and procedure for resolving that issue.


So ordered.

Date: June 15, 2005

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Bruce P. Clark
BRUCE P. CLARK & ASSOCIATES
bpclarkesq@jorsm.com

Trevor J. Crossen
WAGNER REESE & CROSSEN, LLP
tcrossen@injuryattorneys.com

Mark D. Gerth
KIGHTLINGER & GRAY
mgerth@k-glaw.com

Laura S. Reed
RILEY BENNETT & EGLOFF LLP
lreed@rbelaw.com

Jason R. Reese
WAGNER REESE & CROSSEN, LLP
jreese@injuryattorneys.com

Stacy J. Vasilak
BRUCE P. CLARK & ASSOCIATES
bpclarkesq@jorsm.com